IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:06-CV-78-D

| | |
|---|---|
| HENRY MITCHELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

In this action, plaintiff Henry Mitchell ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that plaintiff is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings (DE #14, 17). The motions were referred to the undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that defendant's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 11 November 2002, alleging a disability onset date of 1 January 1999 due to three alleged impairments: bipolar disorder, cognitive difficulties (*e.g.*, memory), and anxiety. Transcript of Proceedings ("Tr.") 93, 97, 111. The application was denied initially, *id.* 74, and again upon reconsideration, *id.* 80, and a request for hearing was timely filed, *id.* 83. On 8 June 2005, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 33-68.

In a written decision dated 30 August 2005, *id.* 13-22, the ALJ found that plaintiff was not disabled and therefore was not entitled to DIB, *id.* 21, 22 ¶ 12. Plaintiff timely requested review by the Appeals Council, *id.* 9, and submitted one additional exhibit, *id.* 8. The Appeals Council considered the additional evidence and denied the request for review on 9 December 2005. *Id.* 5-8. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.1581. Plaintiff commenced this proceeding for judicial review on 15 May 2006, pursuant to 42 U.S.C. § 405(g).

B.   **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe disability more specifically in terms of impairments:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

2

Case 5:06-cv-00078-D   Document 23   Filed 11/15/07   Page 2 of 11

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. Part 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a

3

medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was thirty-seven years old on the alleged onset date of disability and was forty-four years old on the date of the administrative hearing. Tr. 33, 93, 97. He has a college education, is divorced, and has a daughter who does not live with him. *Id.* 13, 19, 39, 50-51, 56. Plaintiff had purported past relevant work experience as a mail sorter, computer technical support specialist, computer repairer, computer test technician, and census enumerator. *Id.* 13-14, 46-49.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. *Id.* 14, 21 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairment which was severe withing the meaning of the Regulations, 20 C.F.R. § 404.1520(c): bipolar disorder. *Id.* 18, 21 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments in appendix 1 to 20 C.F.R. part 404, subpart P. *Id.* 18, 21 ¶ 4.

At step four, the ALJ determined that plaintiff had the RFC to perform work activity at all physical exertional levels limited to simple, routine, and repetitive tasks in a low stress and stable environment and nonproduction jobs with occasional interaction with coworkers and supervisors. *Id.* 19, 21 ¶ 6. Based on this RFC, the ALJ found that plaintiff could not perform any of his past relevant work. *Id.* 19, 21 ¶ 7. At step five, the ALJ found that although plaintiff could not return to his past relevant work, there were jobs in the national economy existing in significant numbers

4

that plaintiff could perform, such as an office cleaner, industrial cleaner, and cleaner of lab equipment. *Id.* 20, 22 ¶ 11.

## II. DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ failed to consider plaintiff's alleged inability to work on a sustained basis and failed to assess properly plaintiff's credibility. Each of these issues is examined in turn below following a discussion of the applicable standard of review.

### A.  Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992)

5

(*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Consideration of Plaintiff's Ability to Perform Sustained Work

Plaintiff concedes that the record supports the ALJ's finding that plaintiff has the ability to perform work. Plf. Mem. (DE #14), pp. 16, 17. Plaintiff contends, however, that his bipolar impairment does not ensure that he will be able to hold a job on a sustained basis. "[T]he record does support an ability to work, but it also supports the reality that even with such ability, [plaintiff's] capacity to sustain work is not guaranteed." *Id.* at 17. Plaintiff alleges that the ALJ failed to consider his purported inability to hold a job and that the record lacks substantial evidence that he can do so.

Plaintiff is correct that a finding that a claimant is not disabled and therefore capable of engaging in substantial gainful activity requires more than a determination that the claimant can perform the tasks associated with one or more jobs; "it also requires a determination that the

6

claimant can *hold* whatever job he finds for a significant period of time." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986); *see also Washington v. Shalala*, 37 F.3d 1437, 1442-43 (10th Cir. 1994); 20 C.F.R. 404.1545(c) ("When we assess your mental abilities, we . . . determine your residual functional capacity for work activity on a regular *and continuing* basis." (emphasis added)). Contrary to plaintiff's contention, however, the law does not require that the claimant be shown to a certainty to have the ability to hold a job. Plaintiff cites no authority to support this proposition, and the court is aware of none.

The court also rejects plaintiff's contention that the ALJ did not consider plaintiff's ability to perform sustained work. Plaintiff, through counsel, presented argument to the ALJ on this issue at the hearing and again in a post-hearing letter. Tr. 67, 146-47. The ALJ states expressly in her decision that she considered "the claimant's functioning over time" and "the extent to which the claimant's impairment interferes with his ability to function . . . on a sustained basis." *Id.* 17. She also references plaintiff's job history at the start of her decision, which shows a tendency to change jobs with frequency. *Id.* 13-14. The ALJ had questioned plaintiff at length at the hearing about his prior jobs, including how long he held them. *Id.* 40-42, 46-50. In addition, as part of her methodical review of the medical evidence, the ALJ references statements from the records of various psychiatrists and psychologists bearing directly on plaintiff's ability to hold a job. *E.g., id.* 15,[1] 16,[2]

---

[1] Referencing a 19 Jan. 2001 letter at Tr. 182 and 18 Dec. 2001 progress note at *id.* 190 by psychiatrist Roger Perilstein, M.D. (who treated plaintiff apparently from 1993-2003, *id.* 221) indicating, respectively, that plaintiff was more motivated to benefit from vocational rehabilitation services and was reporting to work on time.

[2] Referencing a 6 April 2001 evaluation by consulting psychologist Alexander Julian, III, Ph.D. at Tr. 180 opining that plaintiff was a high risk to abandon future job placements. Also referencing a 5 Feb. 2003 evaluation by consulting psychologist Anthony J. Smith, Ph.D. opining that plaintiff could do certain simple work although it would be difficult for him when he was depressed and that he could interact appropriately with co-workers and supervisors.

7

16-17.[3] The ALJ notes as well plaintiff's testimony that "he thought his tardiness would be a problem [with a full-time job]." *Id.* 19 (referring to testimony at *id.* 58).

The ALJ also discusses an assessment by a non-examining state psychiatrist who opined that plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but that plaintiff could perform simple, routine, repetitive tasks in a low stress environment. *Id.* 19, 201-02. The ALJ found this determination consistent with the evidence of record and incorporated these limitations into the RFC for plaintiff. *Id.* 19, 21 ¶ 6. The ALJ thereby expressly addressed in her RFC determination factors bearing on plaintiff's ability to perform work on a sustained basis. At the same time, the ALJ found that plaintiff's RFC rendered him unable to perform his past relevant work, which, as indicated, reflects frequency of job changes. *Id.* 19, 21 ¶ 7. The court concludes from this and the other portions of the ALJ's decision that her determination that plaintiff could perform jobs available in the national economy include a determination that plaintiff could hold such jobs for a significant period.

While there is some contrary evidence in the record on plaintiff's ability to hold a job, there is no question that substantial evidence supports the determination that plaintiff can do so. The most recent medical evidence indicates that plaintiff's bipolar disorder is largely controllable with medication. *Id.* 190, 221. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling."). In addition, plaintiff consistently scores at average to above-average intelligence on IQ tests. *Id.* 151, 179-80, 199. Also

---

[3]Referencing an 18 March 2005 letter evaluation by treating psychiatrist Andrew Fullwood, M.D. at Tr. 221 indicating that plaintiff had a favorable prognosis for full-time work.

8

supportive of the ALJ's determination is the broad range of activities of daily living in which plaintiff engages, which include reading books, researching medications, doing his own grocery shopping, and maintaining friendships. *Id.* 19. Furthermore, during much of the alleged period of disability, plaintiff was working part time as a standardized patient at the University of North Carolina,[4] although the ALJ found that this work did not constitute substantial gainful activity given the limited hours and compensation involved. *Id.* 14.

The psychiatrist who treated plaintiff from August 2003 until March 2005 (approximately two months before the 8 June 2005 hearing), Andrew Fullwood, M.D., opined in an 18 March 2005 letter that plaintiff's "prognosis is fair to good that he can return to full time work, though [he] may have ongoing problems with concentration [and] energy level." *Id.* 221.[5] The ALJ accorded controlling weight to Dr. Fullwood's opinion as plaintiff's most recent treating physician. *Id.* 17; *see* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. R. 96-2p. A psychiatrist, Stephan F. Baum, M.D., who subsequently performed an examination of plaintiff, in May 2005, found "no indication without ancillary medical history to substantiate any disability." Tr. 254. In addition, as indicated, the ALJ included in plaintiff's RFC restrictions responsive to limitations on plaintiff's ability to perform sustained work and found plaintiff unable to perform his past relevant work. For this and the other

---

[4]Plaintiff testified that this job entailed his posing as a patient and following a script regarding hypothetical ailments as part of a medical student training program. Tr. 39-41.

[5]The post-hearing letter plaintiff's attorney submitted to the ALJ, dated 22 June 2005, states that Dr. Fullwood told the attorney that "[h]is opinion continues to reflect that given in his letter written on March 18, 2005" and that "a return to work was possible if [plaintiff] found a job that he liked." *Id.* 146, 147. These representations suffer from the obvious evidentiary deficiencies that they are second hand and were made by a party's advocate. Moreover, a claimant's dislike of a particular type of work that he is otherwise able to do is not a valid basis for disability. 20 C.F.R. § 404.1566(c)(8). While the ALJ notes these purported statements by Dr. Fullwood, *id.* 17, she appropriately relied on the records by Dr. Fullwood himself.

9

reasons discussed, the court finds without merit plaintiff's challenge to the ALJ's disposition of the issue of plaintiff's ability to hold a job.

C.     **Assessment of Plaintiff's Credibility**

As noted above, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Plaintiff does not dispute that the ALJ made such a finding here. Tr. 19, 21 ¶ 5. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. R. 96-7p).

Here, the ALJ determined that plaintiff's statements about his impairments and their impact on his ability to work were not entirely credible in light of the objective medical evidence. Tr. 19, 21 ¶ 5. The ALJ discussed at length and in detail the evidence upon which her determination was based. *Id.* 18-19 (*see especially* 1st para. on p. 18). This includes much of the same evidence supporting the determination that plaintiff can perform work on a sustained basis.

The ALJ's credibility determination is therefore supported by substantial evidence, and plaintiff's challenge to it is unfounded. The court finds that the ALJ's decision is otherwise supported by substantial evidence of record and should be affirmed.

10

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that defendant's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 16th day of November, 2007.

James E. Gates
United States Magistrate Judge